# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

GREG E. CARTER,

        Petitioner,  :        Case No. 2:25-cv-307

- vs -

        District Judge Algenon L. Marbley
        Magistrate Judge Michael R. Merz

WARDEN, Noble Correctional
  Institution,

             :
        Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Greg Carter under 28 U.S.C. § 2254, is before the Court for decision on the merits. Relevant filings are the Petition (ECF No. 3), the State Court Record (ECF No. 8), Respondent's Return of Writ (ECF No. 9), Petitioner's Response to Respondent's Answer/Return of Writ (ECF No. 13, hereinafter "Reply"), and Respondent's Sur-Reply (ECF No. 14)[1].

The Petition pleads the following grounds for relief:

> **Ground One:** Appellant's convictions were not supported by sufficient evidence.
>
> **Supporting Facts**: Appellant convictions were not supported by sufficient evidence. Specifically, he plaintiff-appellee, the State of Ohio, failed to prove the dates on which the offenses occurred except for one of the counts, and that the state failed to prove venue,

---

[1] The arguments in the Motion for Leave are sufficiently persuasive to the Court. No further sur-reply shall be filed.

1

evidence regarding dates and venue was vague and inconclusive, the offenses occurred at specific times in Belmont County. (sic)

**Ground Two**: The trial court abused its discretion in allowing Leslie Doerfler to testify, where the statements to which she testified did not constitute statements for purpose of medical diagnosis or treatment under (sic)

**Supporting Facts**: The trial court should not have allowed Doerfler to testify as to statements made by S.W. and L.W. because her testimony did not comply with Evid.R. 803(4) as statements for the purpose of medical diagnosis or treatment, the statements by the children to Doerfler were for the purpose of a criminal investigation. Doerfler's testimony that she conducted a forensic examination, she was acting as a forensic examiner, and her report stated that it was "not part of a medical record." Additionally, she got her referral from Harmony House.

**Ground Three**: The trial court abused its discretion in allowing Scott Steele to testify, where the statements to which he testified did not constitute statements for the purpose of medical diagnosis or treatment under evid.r. 803(4).

**Supporting Facts:** The trial court should not have allowed Steele to testify as to statements by S.W. and L.W. because his testimony did not comply with Evid.R. 803(4) as being for the purpose of medical diagnosis or treatment. Steele did not present any evidence of medical credentials, training, or experience. Nor did he present any evidence that he interviewed the children as part of a medical diagnosis or treatment.

**Ground Four**: The trial court abused its discretion in excluding evidence of L.W.'s social media posts

**Supporting Facts**: The trial court should have allowed him to present evidence of L.W.'s social media posts. Counsel sought to introduce Defense Exhibit A, which was a copy of numerous social media messages by L.W. referencing sexual acts, sexual terminology, and sexual activity between her and her stepbrother. The trial court granted the state's objection to the evidence to the evidence citing Ohio's rape shield law and its prior order excluding any evidence of sexual contact between L.W. and her stepbrother.

**Ground Five**: The trial court's decision to station two deputies surrounding appellant, in view of jurors, during the first day of trial prejudiced appellant, in violation of his right to due process under

> the Fifth and Fourteenth Amendments to the United States Constitution, and Article 1, section 16 of the Ohio Constitution.
>
> **Supporting Facts:** At the conclusion of the first day of trial, defense counsel brought up an issue with the trial court. Counsel stated that there were two deputies seated within three to four feet of appellant.
>
> **Ground Six:** The trial court's imposition of consecutive sentences under R.C. 2929.14(C)(4) was contrary to law.
>
> **Supporting Facts**: The court should not have imposed consecutive sentences. It asserts that while the trial court made the statutorily-mandated consecutive sentencing findings at the sentencing hearing, the court failed to include those findings in the sentencing judgment entry.
>
> **Ground Seven**: Appellant's indictment was void with respect to count five of the indictment because the indictment was insufficient to charge appellant with the offense, in violation of appellant's protections against double jeopardy and right to due process under the Fifth, Sixth, and Fourteenth amendments to the United States Constitution and article 1, section 10 of the Ohio Constitution.
>
> **Supporting Facts:** The indictment did not properly charge him on the fifth count of rape. Count Five only lists, "Rape, O.R.C. § 2907.02(A)(2)(B), F1." Count Five does not set forth the name or identity of the alleged victim, the specific acts, or the date or date range on which the offense allegedly occurred. Appellant claims he was prejudiced by these defects. Without a specific date and victim, appellant argues, he could not adequately prepare a defense to this charge.

Petition, ECF No. 3.

In his Reply, Petitioner purports to add two new grounds for relief:

> **Ground Eight:** Void indictment as to count five, is cognizable and, in the alternative, is meritorious under AEDPA. The indictment was improperly amended after trial which is a direct violation of the Petitioner's Fifth and Sixth Amendment rights.
>
> **Ground Nine:** Ineffective assistance of counsel and judicial and prosecutorial misconduct: new evidence.

(ECF No. 13, PageID 661-63).

3

Respondent raises two affirmative defenses which block consideration of the merits of any of Petitioner's claims. They are discussed here separately.

**Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") enacted for the first time in American jurisprudence a statute of limitations for habeas corpus cases. Codified at 28 U.S.C. § 2244(d) it provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Respondent calculates the statute's running under § 2244(d)(1)(A) and asserts that 720 untolled days expired between the finality of Carter's sentence on direct appeal and the date he filed his Petition here (Return, ECF No. 9, PageID 585).

Petitioner does not dispute that calculation, but asserts his failure to file on time is excused by his actual innocence (Traverse, ECF No. 13, PageID 639-42). The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.
>
> * * *
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013).

In *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit anticipated *McQuiggin* by holding Congress enacted the statute of limitations in 28 U.S.C. § 2244(d)(1) "consistent with the *Schlup* [*v. Delo*] actual innocence exception." The *Souter* court also held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless

5

> the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

> '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citing *Sawyer v. Whiteley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). And in the "gateway" context, our court has said the same thing. *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. 2003). This means that a petitioner may not pass through the equitable gateway by simply undermining the state's case. Rather, he must demonstrate that he *factually* did not commit the crime. Of course, dismantling the state's case is *relevant* and *helpful* to the petitioner because it leaves a vacuum to be filled by an exonerative explanation; but it is not sufficient in and of itself. This distinction between exonerating evidence and impeachment evidence undergirds both of the Supreme Court's landmark equitable-exception cases. *Schlup*, 513 U.S. at 324, 115 S.Ct. 851; *House*, 547 U.S. at 552–53, 126 S.Ct. 2064.

*Hubbard v. Rewerts,* 98 F.4th 736 (6th Cir. 2024).

Petitioner has failed to present any new evidence at all in support of his actual innocence claim. Instead he relies on his assertion that insufficient evidence was presented at trial. But *Schlup*, *Souter,* and *McQuiggin* plainly require new evidence and Carter has presented none.

6

Respondent's statute of limitations defense is well taken and the Petition should be dismissed with prejudice as untimely.

**Procedural Default**

Respondent also asserts the Court cannot reach Carter's claims on the merits because he procedurally defaulted in presenting them to the Ohio courts (Return, ECF No. 9, PageID 588-91). Respondent points out that Carter has never appealed any of his claims to the Ohio Supreme Court but that one complete round of state appeals is required by Supreme Court precedent, citing *O'Sullivan v. Boerckel,* 526 U.S. 838, 846-7(1999).

Carter does not respond by claiming he ever presented his claims to the Ohio Supreme Court. Instead, he relies again on the actual innocence exception. It is unavailing to excuse procedural default for the reasons given above.

**Grounds Eight and Nine**

As noted above, Petitioner pleads two new Grounds for Relief in his Reply. Respondent opposes consideration of these claims because Petitioner has neither sought nor obtained court permission to add new claims.

A habeas corpus petition may be amended as provided in Fed. R. Civ. P. 15. 28 U.S.C. § 2242. Rule 15 provides an amendment may be made once as a matter of course before a responsive pleading is filed and thereafter either by consent or with court permission. Because Respondent has filed a responsive pleading and Petitioner has not obtained Respondent's consent, he must have the Court's permission to amend.

The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182. See also *Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997)(citing *Foman* standard).

In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, i.e., if it could withstand a motion to dismiss under Rule 12(b)(6). *Jackson v. City of Cleveland*, 925 F.3d 793, 809 (6th Cir. 2019); *Hoover v. Langston Equip. Assocs.,* 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir. 1986); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989); *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Development Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980); *United States ex rel. Antoon v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 887 (S.D. Ohio 2013)(Rose, J.); *William F. Shea, LLC v. Bonutti Reseach Inc.*, 2011 U.S. Dist. LEXIS 39794, *28 (S.D. Ohio March 31, 2011) (Frost, J.).

Likewise, a motion to amend may be denied if it is brought after undue delay or with dilatory motive. *Foman v. Davis*, 371 U.S. 178 (1962); *Prather v. Dayton Power & Light Co.*, 918 F.2d 1255, 1259 (6th Cir. 1990); *Bach v. Drerup*, 2012 U.S. Dist. LEXIS 35574, *1 (Ovington, M.J.); *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), cert denied, 517 U.S. 112

8

(1996)(amendment should be denied if it "is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."). In *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994), the court repeated and explicated the *Foman* factors, noting that "[d]elay by itself is not a sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted. *Id.* at 130, quoting *Head v. Jellico Housing Authority*, 870 F.2d 1117, 1123 (6th Cir. 1989). These considerations apply as well in capital habeas corpus cases. *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998), quoting *Brooks*. Denial of a motion for leave to amend the complaint generally is reviewed for abuse of discretion, but denial on the basis of futility is reviewed de novo. *Evans v. Pearson Enters., Inc.,* 434 F.3d 839, 853 (6th Cir. 2006).

Petitioner has not moved for leave to amend. If he did so, the Magistrate Judge would deny leave for the following reasons:

First of all an amendment to add Grounds Eight and Nine would be futile because they are barred by the statute of limitations and Petitioner's procedural default as discussed above.

Second, addition of Ground Eight would be futile because the Fifth Amendment grand jury indictment requirement is not applicable to the States. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975); *Williams v. Haviland*, 467 F.3d 527 (6th Cir. 2006).

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the

Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

September 10, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.